UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIEL ADAM BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-cv-00184-JPH-MJD ) |
| KNOPP, | ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel Brown filed this lawsuit when he was confined at the Vigo County Jail, alleging that defendant Officer Knopp used excessive force against him when he was being booked into the Jail. Defendant Knopp has filed a motion for summary judgment. Dkt. 91. For the reasons below, that motion is **GRANTED**.[1]

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v.*

---

[1] Also pending is Mr. Brown's motion for leave to file a surreply. Dkt. 129. Local Rule 56-1(d) allows a surreply "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." Mr. Brown's surreply essentially repeats arguments that are in his response to the motion for summary judgment. The motion to file a surreply is **GRANTED** to the extent that the Court has reviewed and considered the proposed surreply.

*Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

Because Defendant Knopp has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On May 6, 2019, officers from the Terre Haute Police Department arrested Mr. Brown pursuant to a warrant. Dkt. 91-1 (Brown Dep. at 14:22-15:2; 19:19-21). During the arrest, Mr. Brown was tased and his wrists and arm were injured. *Id.* (Brown Dep. at 22:1-5; 32:10-18). After the arrest, Mr. Brown was transported to the Vigo County Jail. *Id.* (Brown Dep. at 32:8-9). Officer Knopp and another officer escorted Mr. Brown into the Jail. *Id.* (Brown Dep. at 34:6-8). Mr. Brown and Officer Knopp knew each other from prior instances when Mr. Brown had been arrested and incarcerated. *Id.* (Brown Dep. at 33:22-25).

Mr. Brown argued with the arresting officers during booking. Dkt. 91-2 ¶ 10. Mr. Brown asked Officer Knopp to remove the handcuffs so that he could put his hands up to the cameras to document his injuries. Dkt. 91-1 (Brown Dep. at 35:9-16); 91-2 ¶¶ 14, 16. After Officer Knopp removed Mr. Brown's handcuffs, Mr. Brown turned around and said, "the cuffs are off now, bitch," while aggressively gesticulating at one of the officers. Dkt. 91-1 (Brown Dep. at 36:11-12); dkt. 118-1 (video at 3:06-3:10). Officer Knopp then placed Mr. Brown in a

3

vascular hold[2] and took him down to the floor. Dkt. 91-2 ¶ 21; dkt. 118-1 (video at 3:06-3:19). Officer Knopp released the vascular hold when Mr. Brown went to the floor and submitted to handcuffs. Dkt. 91-2 ¶ 22; dkt. 91-1 (Brown Dep. at 39:15-20) ("Q. Do you believe Officer Knopp released the choke hold when you went to the ground? A. Yes. We were on the ground for a few seconds, but yes, when they handcuffed me."); dkt. 118-1 (video at 3:18-3:21). Officer Knopp handcuffed Mr. Brown with the assistance of other officers. Dkt. 91-2 ¶ 24.

Mr. Brown was then lifted off the floor and placed in the restraint chair. Dkt. 91-1 (Brown Dep. at 39:24-40:2); dkt. 118-1 (video at 4:20-4:35). Mr. Brown asked not to be placed in the restraint chair. Dkt. 91-1 (Brown Dep. at 41:24-42:1). When officers directed Mr. Brown toward the restraint chair, he braced his legs and began flailing about to avoid the chair. Dkt. 118-1 (video at 4:21-4:24).[3] He continued to kick his legs as officers pushed him down into the chair. *Id.* (video at 4:24-4:37). As officers were attempting to secure Mr. Brown to the chair, Mr. Brown continued flailing and kicking, and Officer Knopp drive

---

[2] Mr. Brown refers to this hold as a "chokehold." Regardless of nomenclature, the video shows that Officer Knopp wrapped his arm around Mr. Brown's neck and took him to the floor before securing him in handcuffs. Dkt. 118-1 (video at 3:08-3:19).

[3] Mr. Brown disputes some of the facts regarding his placement in the restraint chair. The Court's description of the events is taken from its review of the applicable video and is therefore considered undisputed. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [the video and audio evidence] so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

4

stunned[4] him twice.[5] Dkt. 91-1 (Brown Dep. at 43:5); 91-2 ¶ 28, 31; dkt. 118-1 (video at 4:24-4:37). Officers held Mr. Brown's legs as he was strapped into the restraint chair. Dkt. 91-1 (Brown Dep. at 43:12-14). He tried to get the handcuffs off and remove the pressure from his wrists as he was placed in the restraint chair. Dkt. 91-1 (Brown Dep. at 43:15).

Mr. Brown was then taken to the multipurpose room in the restraint chair and was removed from the chair a few minutes later. Dkt. 91-1 (Brown Dep. at 47: 3-15). Officer Knopp then escorted Mr. Brown to the medical department. Dkt. 91-1 (Brown Dep. at 49:1-5).

## III.
## Applicable Law

### A. Qualified Immunity

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v.*

---

[4] Officer Knopp refers to "drive stunning" or "tasing" Mr. Brown, and to the use of an "electronic control device," while Mr. Brown stated that Officer Knopp "tased" him. The Court understands all of these terms to refer to the same event and device.

[5] While Officer Knopp testifies that he tased Mr. Brown twice, Mr. Brown asserts that Officer Knopp tased him "multiple times." Dkt. 118 at 4. This statement is too vague to raise an issue of fact regarding how many times Officer Knopp used the taser and the Court therefore concludes that Officer Knopp tased Mr. Brown twice. *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.") (cleaned up).

*Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). Qualified immunity thus "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231

The "difficult part" of the qualified-immunity test is "identifying the level of generality at which the constitutional right must be clearly established." *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). A "high level of generality" is not appropriate; instead, the question is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Id.* "Such specificity is especially important in the Fourth Amendment context," because "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix,* 577 U.S. at 12 (quotation and citation omitted).

In excessive force cases, "the result depends very much on the facts of each case," so officers are entitled to qualified immunity unless precedent "*squarely governs*" the case at hand. *Id.* at 309 (emphasis in original) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 201 (2004)). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix,* 577 U.S. at 12.

"To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the

6

official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

### B. Fourteenth Amendment Standard

Because Mr. Brown was a pre-trial detainee following his arrest, the Fourteenth Amendment governs his claim. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Under the Fourteenth Amendment, "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Id.* at 400. Thus, to prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97.

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397. This determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

### IV.
### Discussion

Mr. Brown claims that Officer Knopp used excessive force first when he took him to the ground and then again when he tased him. Officer Knopp argues that he is entitled to judgment as a matter of law because (1) he did not use excessive force against Mr. Brown and (2) Mr. Brown's claims are barred by

qualified immunity. Whether Officer Knopp is entitled to qualified immunity is tied to a fact question: Whether Mr. Brown was actively or passively resisting. This matters because officers cannot "use significant force on nonresisting or passively resisting suspects." *Abbott*, 705 F.3d at 732. The Court evaluates Officer Knopp's claim to qualified immunity with this in mind and exercises its discretion to begin with the second, "clearly established law" prong of the qualified-immunity test. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Calderone v. City of Chicago*, 979 F.3d 1156, 1162 (7th Cir. 2020).

### A. Chokehold/Vascular Restraint

Officer Knopp argues that using a vascular restraint and taking Mr. Brown to the floor was objectively reasonable in light of Mr. Brown's actions. Officer Knopp explains that he took Mr. Brown to the floor because of Mr. Brown's sudden movement and his belief that Mr. Brown might attack the officers. Mr. Brown responds that he was simply in a verbal dispute with the officers,[6] but he does not dispute that he had verbally threatened the officers and had turned away from the book-in counter and toward them. Dkt. 91-1 (Brown Dep. at 35:9-16, 36:5-8, 36:11-12). Moreover, the video clearly shows Mr. Brown angrily gesticulating at one of the officers. Dkt. 118-1 (video at 3:06-3:10). And Mr.

---

[6] Mr. Brown refers to statements made by Officer Knopp and others regarding Mr. Brown's behavior during this incident, apparently during the investigation of the incident, that he claims are untrue. Dkt. 121 at 5-6. Specifically, Mr. Brown states that the defendants state that he attacked the officers and attempted to get past Knopp. *Id.* But in the motion for summary judgment, while the defendants assert that Mr. Brown had been in an altercation with officers during his arrest and had verbally threatened the officers while he was being booked into the Jail, they do not contend that Mr. Brown had attempted to physically assault the officers at that time.

Brown had been in an altercation with one of the arresting officers earlier in the day. Dkt. 91-1 (Brown Dep. at 22:1-5).

Based on these facts, no reasonable officer would have understood that using a vascular hold to take Mr. Brown down and secure him with handcuffs was unreasonable under the circumstances. First, the need for force was apparent by Mr. Brown's actions earlier in the day, his physical gestures, and his verbal threats. When Mr. Brown turned and verbally threatened officers, Officer Knopp had to make an immediate decision regarding the amount of force necessary to de-escalate the situation. *See Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) ("'[O]fficers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'") (quoting *Graham v. Connor*, 490 U.S. 389 396-97 (1989)). Next, the video does not reflect that Officer Knopp's hold on Mr. Brown was any longer or more restrictive than necessary to respond to the perceived threat posed by Mr. Brown. And, while Mr. Brown contends that Officer Knopp placed him in a "chokehold" that cut off his airway for 10-11 seconds, the video reveals that Officer Knopp held Mr. Brown's neck while he was flailing no longer than was necessary to gain his compliance. In addition, Mr. Brown has demonstrated no further injury from that restraint.

Mr. Brown has pointed to no case that would lead a reasonable officer to conclude that the takedown by Officer Knopp was an unreasonable use of force. *See Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (qualified immunity defense places the burden on the plaintiff to identify a closely

9

analogous case establishing the constitutional right). Considering all the circumstances, Officer Knopp did not violate clearly established law when he took Mr. Brown to the ground and held him in place until secured in handcuffs. He is therefore entitled to qualified immunity with respect to that part of Mr. Brown's excessive force claim.

### 2. Use of Taser in drive-stun mode

Officer Knopp argues that using the taser to drive-stun Mr. Brown twice while officers were trying to get him secured into the chair was reasonable. After Mr. Brown was taken to the floor and handcuffed, officers picked him up and pushed him into the restraint chair.[7] Mr. Brown contends that using the taser was excessive because he was handcuffed, being restrained by several officers, and not resisting officers as they were trying to secure him into the restraint chair. Dkt. 119 at 6.

"Courts generally hold that the use of taser against an actively resisting suspect either does not violate clearly established law or is constitutionally reasonable." *Abbott*, 705 F.3d at 727. Here, the designated evidence shows that Mr. Brown was actively resisting the officers as they were trying to secure him into the restraint chair.

---

[7] To the extent that Mr. Brown challenges the placement in the restraint chair, he has not presented sufficient evidence that this action constituted an unreasonable use of force. As already discussed, Mr. Brown was being unruly and had threatened officers. Mr. Brown has identified no caselaw to suggest that placement in the restraint chair for a short time was unreasonable under these circumstances. Further, the video reflects that he did not initially submit to handcuffs and did not passively submit to the restraint chair.

Mr. Brown compares his claims to those raised in *Abbott*. In that case, police arrested and tased two suspects. The first was handcuffed but had moved his hands to the front of his body and admitted that he "continued fighting" with officers after one tasing. *Abbott*, 705 F.3d at 727. The court found that the officers were entitled to summary judgment on this plaintiff's claims because he was an actively resisting suspect. *Id.* (citing cases); *see also Dockery*, 911 F.3d at 467 ("declining to follow instructions while acting in a belligerent manner" can amount to active resistance that would make use of a taser objectively reasonable) (citing *Forrest v. Prine*, 620 F.3d 739, 745–46 (7th Cir. 2010)). On the other hand, the court noted that an officer may not use significant force (like a taser) against a "nonresisting or passively resisting" subject. *Id.* (citing *Abbott*, 705 F.3d at 732).

Here, as already explained, the video reflects that Mr. Brown resisted being placed in the restraint chair by bracing, flailing about, and kicking his legs. Dkt. 118-1 (video at 4:21-4:26). He continued to kick his legs and flail after being pushed down into the chair. *Id.* (video at 4:26-4:35). The designated evidence shows that Mr. Brown actively resisted.

Mr. Brown has pointed to no case that would lead a reasonable officer to conclude that Officer Knopp's use of the taser to drive-stun Mr. Brown twice until secured in the restraint chair was an unreasonable use of force. *See Sparing*, 266 F.3d at 688. Considering all the circumstances, Officer Knopp did not violate clearly established law when he used his taser to drive-stun Mr. Brown twice until he was secured in the restraint chair and subdued. A

reasonable officer in these circumstances would not have been aware that using a taser to gain compliance would constitute unreasonable force. *See Abbott*, 705 F.3d at 727; *cf. Clarett v. Roberts,* 657 F.3d 664, 674–75 (7th Cir. 2011) (affirming defense verdict where defendant used taser three times on plaintiff when she blocked the doorway to her son's bedroom after several officers had entered and defendant heard a commotion in the bedroom and believed officers needed help; the second and third tasings were deployed because plaintiff was kicking and flailing and continuing assaultive behavior as defendant was arresting her).

Mr. Brown suggests it was unnecessary to tase him more than once because he was not resisting. He states instead that footage of his body jerking reflects a response to being tased—not resistance. Dkt. 119 at 8. But review of the video demonstrates that Mr. Brown appeared to kick his legs and resist from the time he was placed in the restraint chair. Dkt. 118-1 (video at 4:26-4:35). No reasonable officer would have understood that tasing an apparently actively resisting suspect was unreasonable under the circumstances. *See Clarett*, 657 F.3d at 674–75 (7th Cir. 2010) (including "kicking and flailing" as examples of "active resistance"); *Oakley v. Adrian*, No. 10-CV-110-JPG-PMF, 2012 WL 967505, at *3 (S.D. Ill. Jan. 24, 2012), *report and recommendation adopted as modified*, No. 10-CV-110-JPG, 2012 WL 966576 (S.D. Ill. Mar. 21, 2012) (granting qualified immunity when plaintiff was tased after he "had been secured in handcuffs but was still fighting"); *contra Morfin v. City of East Chicago*, 349

F.3d 989, 1005 (7th Cir. 2003) (holding that a suspect was nonresisting when they were "docile and cooperative").

Again, Mr. Brown has not identified a case closely analogous to this case that would have put a reasonable officer on notice that drive stunning him twice while he appeared to be resisting would constitute excessive force.[8] Officer Knopp is therefore entitled to qualified immunity on Mr. Brown's claim that the use of the taser constituted excessive force.

## IV.
## Conclusion

Officer Knopp's motion for summary judgment, dkt. [91], is **GRANTED**. Mr. Brown's motion for leave to file a surreply, dkt. [129], is **GRANTED**.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 9/29/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[8] In addition to *Abbott*, Mr. Brown compares his claims to those in several other cases, but those cases are not similar enough to this case to clearly establish the right Mr. Brown asserts here. *See Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021) (questions of fact existed regarding whether totality of circumstances justified police officers' use of deadly force); *Williams v. City of Chicago*, 733 F.3d 749 (7th Cir. 2013) (officers were not entitled to qualified immunity on false arrest claim) *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) (summary judgment not appropriate on excessive force claim when questions of fact regarding the extent to which the suspect resisted and how many times the taser was used, but it was used at least 6 times and suspect subsequently died); *Orem v. Rephann*, 523 F.3d 442 (4th Cir. 2008) (officer not entitled to summary judgment on excessive force claim when he used taser on suspect who was handcuffed and in foot restraints); *Parker v. Gerrish*, 547 F.3d 1 (1st Cir. 2008) (it was reasonable for the jury to find that the use of stun gun during arrest was excessive when arrestee's resistance to handcuffs was de minimis).

Distribution:

DANIEL ADAM BROWN
189035
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com